IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SARAH DICKEY, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:18CV920 |
| R.R. DONNELLEY & SONS COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sarah Dickey filed this action on behalf of herself and other similarly situated workers alleging that Defendant R.R. Donnelley & Sons Company ("R.R. Donnelley") violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime. (See generally Compl. [Doc. #1].) On January 13, 2021, the Court conditionally certified the collective action and preliminarily approved the parties' settlement. (Order [Doc. #28].) The matter is now before the Court on the parties' Joint Motion for Certification of Collective Action and Final Approval of FLSA Settlement ("Motion") [Doc. #34]. For the reasons explained below, the Motion is granted.

I.

A plaintiff seeking redress for violations of the FLSA may do so on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). The parties earlier agreed that, for purposes of the Settlement Agreement and settlement,

Dickey and putative Collective Members were similarly situated because they "worked at a single location in Mooresville, North Carolina and were subject to the same payroll and timekeeping practices" and "they were paid on an hourly basis and subject to the same alleged violations of the FLSA." (Decl. of Philip J. Gibbons, Jr. ¶ 17 [Doc. #26-2] cited in Mem. in Supp. of Jt. Mot. for Conditional Certification at 11 [Doc. #26].) At the conditional certification stage, the plaintiff and putative collective members must be "'sufficiently similar to merit sending notice of the action to possible members of the class'" and, if they are so situated, "'notice is sent and new plaintiffs are permitted to "opt in" to the lawsuit.'" Adams v. Citicorp Credit Servs., Inc., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (quoting Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010)). Such was the case here. After conditional certification and preliminary approval of the settlement, notice was sent to the twelve putative Collective Members, ten of whom including Dickey opted into the settlement.[1] (Decl. of Philip J. Gibbons, Jr. ¶ 19 [Doc. #36]; see also Claim Forms [Docs. #29-1 to 29-4, 30-1, 31-1 to 31-3, 32-1, & 33-1].)

Now, at the final certification stage, "[t]he parties adhere to their positions that for settlement purposes, and following the opt-in period, Plaintiff is similarly situated to the Collective Members" and there is "no reason to decertify the

---

[1] The $5,587.60 "attributable to claims of the" two putative Collective Members who did not opt in "will remain the sole property of Defendant." (Decl. of Philip J. Gibbons ¶ 20 [Doc. #36].)

2

collective action". (Mem. in Supp. of Jt. Mot. for Certification of Collective Action and Final Approval of FLSA Settlement ("Mem. in Supp.") at 3 [Doc. #35]; see also Mot. ¶ 1 (defining Collective Members).) The Court agrees for purposes of settlement. See Vazquez-Aguilar v. Gasca, 477 F. Supp. 3d 418, 422-23 (E.D.N.C. 2020) (discussing standards from the Eastern District of North Carolina, as well as the Second, Sixth, and Ninth Circuit Courts of Appeals, for assessing whether employees are similarly situated). The similarly situated Collective Members are determined to consist of

> Plaintiff and 9 other individuals who opted-in [sic] to this lawsuit and worked onsite in Mooresville, North Carolina for R.R. Donnelley's client, Lowe's Corporation pursuant to R.R. Donnell[e]y's contract with Lowe's at any time between February 2018 and August 2018, and who worked over 40 hours in a workweek during that time period.

(Mot. ¶ 1.)

II.

Having certified the collective action for purposes of final settlement, the Court must now assess whether the settlement itself is a "fair and reasonable compromise of disputed claims and issues arising from a bona fide dispute raised pursuant to the FLSA." Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)). Thus, to approve an FLSA settlement, the court must make "finding[s] with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the

3

settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." Duprey v. Scotts Co., LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014); see also Hood v. Uber Techns., Inc., No. 1:16-CV-998, 2019 WL 93546, at *4 (M.D.N.C. Jan. 3, 2019).

A.

The Court must first determine whether a bona fide dispute exists. "'A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial.'" Kirkpatrick, 352 F. Supp. 3d at 502 (quoting Hall v. Higher One Machs., Inc., No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016)). To determine this, the court looks to the pleadings and proposed settlement agreement. Id. (citing Duprey, 30 F. Supp. 3d at 404.)

In this case, there is a bona fide dispute. Dickey alleges that during the period February 2018 through August 2018, she and the Collective Members worked in excess of forty hours per week, but were required to record only forty hours on their time cards and, thus, were not paid time-and-a-half for their overtime hours. (See generally Compl.) She also alleges that R.R. Donnelley knew that neither she nor the Collective Members were being paid overtime. (Id. ¶ 24.) R.R. Donnelley denies that Dickey was its employee and that she was entitled to overtime. (E.g., Answer ¶ 12 [Doc. #12].) The Settlement Agreement further documents this dispute. (See Recitals, Settlement Agreement [Doc. #26-1].) "This disagreement is a genuine dispute that supports the concept of a negotiated settlement of this FLSA claim." Hood, 2019 WL 93546, at *4 (internal quotations

4

and brackets omitted) (quoting Rivera v. Dixson, No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015)).

B.

The Court must next determine whether the settlement is fair and reasonable. "Although the Fourth Circuit has not addressed directly the relevant factors the court should consider when determining whether a FLSA settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e)." Kirkpatrick, 352 F. Supp. 3d at 502 (citing Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)). These factors include "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits[;] and (6) the amount of the settlement in relation to the potential recovery." Id. at 502-03 (quoting Hargrove v. Ryla Teleservices, Inc., No. 2:11CV344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013); see also Hood, 2019 WL 93546, at * 4; Duprey, 30 F. Supp. 3d at 409. In considering these factors, "there is a strong presumption in favor of finding a settlement fair . . . ." Kirkpatrick, 352 F. Supp. 3d at 503 (quoting Lomascolo v. Parsons Brinckerhoff, Inc., No. 18CV1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

5

Here, all factors support a finding that the settlement is fair and reasonable. First, while the parties did not engage in formal discovery prior to settlement, they exchanged material information including "the production of payroll records and attendance data for Plaintiff and all putative Collective Members during the Relevant Time Period". (Decl. of Gibbons ¶ 12.) Ultimately, Dickey "concluded she had sufficient information about [her] claims and R.R. Donnelley's defenses from which to fairly settle her case." (Mem. in Supp. at 7; see also Decl. of Gibbons ¶ 14.)

Next, as Dickey's counsel ("Collective Counsel") describe, absent a settlement, "[r]esolution of the disputed issues would require substantial time and resources, including dispositive motions, the potential of a multiple-day trial, and possible appeals and post-trial motions." (Decl. of Gibbons ¶ 13.)

Third, there is a presumption that "no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." Lomascolo, 2009 WL 3094955, at *12. Collective Counsel aver that each side "prepared a detailed damages analyses [sic] and engaged in arms-length negotiations", (Decl. of Gibbons ¶ 13), such that the settlement "is the product of good faith negotiations", (Mem. in Supp. at 8). Nothing before the Court evidences otherwise.

As to the fourth factor, this Court has previously recognized that Collective Counsel "are experienced FLSA litigators." See Blackmon v. Cohen, No. 1:17CV890, 2020 WL 91914, at *2 (M.D.N.C. Jan. 8, 2020). Philip Gibbons, Jr.

6

has been admitted to practice law since 1996. (Decl. of Gibbons ¶ 2.) For over two decades, his "practice has focused almost exclusively on litigating labor and employment law cases", having focused "primarily on wage and hour claims under federal and state law" since 2008 during which time he has been lead counsel in over thirty class and/or collective wage and hour lawsuits. (Id. ¶¶ 3, 5.) Martindale-Hubble rates him as an "AV" attorney; Indiana Super Lawyers and North Carolina Super Lawyers have recognized him for "Employment Litigation – Plaintiff"; and Best Lawyers in America has included him in the category "Labor and Employment Law." (Id. ¶ 7.) His partner Craig L. Leis has practiced labor and employment law almost exclusively since his admission to practice law in 2002. (Id. ¶¶ 8, 9.)

Next, Collective Counsel describe "[t]he probability of Plaintiff's success on the merits and other ancillary issues" as "hotly disputed by the Parties". (Mem. in Supp. at 9.) They acknowledge that R.R. Donnelley would have "vigorously contested both certification and the merits of [the] FLSA claims", "that no records exist demonstrating the actual number of overtime hours worked by Plaintiff and the Collective Members", and that R.R. Donnelley "contends liquidated (or double) damages are not available" here. (Decl. of Gibbons ¶ 14.) In light of this, the Court agrees that the probability of Dickey's and the Collective Members' success on the merits is uncertain.

Finally, the amount of the settlement is significant compared to the potential recovery. The Net Settlement Fund of $127,579.07 provides for 100% of the

7

estimated overtime owed to Dickey and the Collective Members and approximately 5% of the estimated liquidated damages. (Id.) Furthermore, ten of the twelve putative Collective Members, including Dickey, opted in, and no one objected after receiving notice of the settlement. (Id. ¶ 19.) In sum, the settlement is fair and reasonable.

C.

The Court must next determine if the requested attorney's fees are reasonable. "Under the FLSA, the court is authorized to award a reasonable attorney's fee to be paid by the defendant, and costs of the action, in addition to any judgment awarded to the Plaintiff." Kirkpatrick, 352 F. Supp. 3d at 503 (internal quotations omitted) (quoting 29 U.S.C. § 216(b)). There are two approaches used for calculating attorney's fees within the Fourth Circuit: the percentage of the fund method and the lodestar method. Id. at 504.

> The percentage of the fund method provides that the court award attorneys' fees as a percentage of the common fund, while the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate.

Id. (internal quotations and brackets omitted) (quoting Phillips v. Triad Guar., Inc., No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016)). Regardless of the method used to calculate fees, the Fourth Circuit typically considers twelve factors to evaluate the reasonableness of the requested attorney's fees in FLSA cases:

8

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (7) the time limitations imposed by the client or circumstances[2]; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978); see Kirkpatrick, 352 F. Supp. 3d at 504-06 (applying the Barber factors to attorney's fees calculated by the percentage of the fund method) & Hood, 2019 WL 93546, at *7 (applying the Barber factors to attorney's fees calculated using the lodestar method). Cf. Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 462 (S.D.W. Va. 2010) (applying other factors but recognizing they are "similar" to those in Barber).

Here, Collective Counsel seek a percentage of the common fund. The Settlement Agreement permits them to request up to 35% of the Maximum Settlement Amount. However, "[t]o maximize the Collective Members' recovery, and in recognition of the delay in obtaining preliminary approval of the Agreement," they are now requesting a fee award of one-third of the Maximum Settlement Agreement, which equals $68,333.33. (Decl. of Gibbons ¶ 22.) Application of the Barber factors and a cross-check with the lodestar method support a finding that the attorney's fees are reasonable. See Kirkpatrick, 352 F. Supp. at 504.

---

[2] Counsel states this factor is not applicable. (Mem. in Supp. at 20.)

Collective Counsel expended time and labor developing a theory of liability, analyzing documents from their clients, obtaining and reviewing voluntary discovery, interviewing several putative Collective Members, calculating detailed damage analysis, and preparing the matter for settlement. (Decl. of Gibbons ¶ 25.) While FLSA litigation is not necessarily novel, the circumstances in which counsel worked were difficult because of the apparent lack of documentation and questions about Dickey's and Collective Members' employment and employer. Despite these challenges, counsel successfully negotiated a fair and reasonable settlement, likely due to their skill and experience in FLSA actions as previously described.

Counsel represented Dickey on a contingency basis and committed time and resources to advancing the action that necessarily created opportunity costs in terms of other work. (Id. ¶ 27; see id. ¶ 3.) This district has recognized that hourly fees similar to those Collective Counsel charge "fall within what the court observes to be the market rates in the relevant community for this type of work." Kirkpatrick, 352 F. Supp. 3d at 507. And, an award of one-third of a common fund in FLSA actions "appears to be a fairly common percentage", DeWitt v. Darlington Cty., No. 4:11-cv-740-RBH, 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013); "[i]n a number of cases, courts found that a fee-award of one-third of the settlement fund was reasonable", McClaran v. Carolina Ale House Operating Co., LLC, No. 3:14-cv-3884-MBS, 2015 WL 5037836, at *5 (D.S.C. Aug. 26, 2015). See also Smith v. Krispy Kreme Doughnut Co., No. 1:05CV187, 2007 WL

119157, at *2 (M.D.N.C. Jan. 10, 2007) (assessing attorney's fee request in ERISA action and noting that "[i]n this jurisdiction, contingent fees of one-third . . . are common").

Counsel negotiated a settlement according to which Dickey and Collective Members "recovered 100% of all estimated overtime wages" and "5% of the estimated liquidated damages". (Decl. of Gibbons ¶ 14.) Not only are these results comparable to the amount in controversy, but they are also notable in light of the defenses and documentary challenges facing Dickey and the Collective Members.

Counsel suggest that because "very few attorneys in the North Carolina legal community . . . focus primarily on plaintiff-side wage and hour employment law" the case would be "undesirable to many attorneys". (Mem. in Supp. at 21.) However, the Court finds this factor not applicable because in its experience attorneys regularly take cases outside those on which they primarily focus. There is nothing discernably undesirable about this FLSA action. Finally, counsel acknowledges that the nature and length of their relationship with Dickey and the Collective Members is a neutral factor. (Id.) In sum, the reasonableness of the award is apparent after application of the Barber factors.

The lodestar cross-check confirms this conclusion. Counsel submitted their billing records detailing their time and labor in this action, including that for which they would not bill because of duplicity and the challenges in obtaining preliminary certification. (See Ex. A to Decl. of Gibbons [Doc. #36-1].) Fees for billable hours attributed to each respective attorney total $65,077.80. (Decl. of Gibbons ¶ 24.)

11

The requested fee of one-third the Maximum Settlement Amount is $68,333.33, representing a multiplier of just 1.05 the lodestar, well within what is reasonable. See Reynolds v. Fidelity Invs. Inst'l Operations Co., Inc., No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (recognizing in an FLSA action that counsel's "request for one-third of the settlement fund is . . . only slightly more than the lodestar, and Fourth Circuit district courts have approved awards that are multiple times greater than lodestar amounts").

III.

Next, Dickey requests a service award of $2,500. Collective Counsel attest that she "devoted a significant amount of time to this matter including reviewing pleadings, participating in strategy meetings, communicating with counsel, developing facts and estimates of hours worked, and conferring regarding terms of settlement." (Decl. of Gibbons ¶ 21.) Putative Collective Members were given notice of the service award, (Settlement Agreement ¶ 3.3), and did not object, (Decl. of Gibbons ¶ 19). This award represents 1.2% of the Maximum Settlement Amount and approximately 2% of the Net Settlement Fund, a reasonable sum for Dickey's efforts. See Reynolds, 2020 WL 92092, at *5 (listing FLSA cases approving service awards).

IV.

Finally, Collective Counsel request reimbursement of $1,000 "in litigation costs and costs associated with settlement administration". (Mem. in Supp. at 23.) The FLSA authorizes the award of "costs of the action". 29 U.S.C. § 216(b). The

12

Settlement Agreement provides for costs not exceeding $2,000, (Settlement Agreement ¶ 3.2), and there were no objections, (Decl. of Gibbons ¶ 19). The $1,000 now requested includes the $400 filing fee and the $600 "skip trace searches utilizing Westlaw PeopleMap status report to locate Eligible Employees whose Notice was returned as undeliverable". (Id. ¶ 28.) "These are reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services." Reynolds, 2020 WL 92092, at *4 (finding fair and reasonable expenses that included "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees") (internal quotations omitted).

V.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that the Joint Motion for Certification of Collective Action and Final Approval of FLSA Settlement [Doc. #34] is GRANTED and that:

1. An FLSA Collective Action is certified for settlement purposes under the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b) for a group of similarly situated individuals ("Collective Members") consisting of:

> Plaintiff and 9 other individuals who opted into this matter and worked onsite in Mooresville, North Carolina for R.R. Donnelley's client, Lowe's Corporation pursuant to R.R. Donnelley's contract with Lowe's at any time between February 2018 and August 2018, and who worked over 40 hours in a workweek during that time period.

2. The Parties' proposed Fair Labor Standards Act Settlement

13

Agreement and Release ("Settlement Agreement," Exhibit 1 to the Parties' Memorandum In Support of Joint Motion For Conditional Certification Of Collective Action, Preliminary Approval of Settlement, and To Facilitate Notice Of Proposed FLSA Settlement [Doc. #26-1]) is approved as it was reached as a result of contested litigation to resolve a <u>bona fide</u> dispute. The Court further approves the applicable releases of claims as set forth in Paragraph 4 of the Settlement Agreement. The settlement is within the range of fairness, reasonableness, and adequacy, and meets the requirements for approval. The Settlement Agreement is finally approved with respect to Plaintiff and Collective Members, and its terms and provisions shall be consummated.

3. The Court approves the distribution of the Net Settlement Fund of $127,579.07, as defined in the Agreement and in the amount proposed by the Parties.

4. The Court approves payment of a service award in the amount of $2,500.00 to Plaintiff Sarah Dickey.

5. The Court awards payment of litigation costs of Collective Counsel and the costs associated with Settlement Administration in the amount of $1,000.00.

6. The Court approves payment of attorneys' fees to Collective Counsel in the amount of $68,333.33, which is equivalent to one-third of the Maximum Settlement Amount, as defined in the Agreement and the amount proposed by the Parties.

A judgment dismissing this action with prejudice will be entered contemporaneously with this Memorandum Opinion and Order.

This the 26th day of March, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge